SCHULTZ, Appellant, vs. C. C. THOMPSON LUMBER COMPANY, Respondent.

*November 27 — December 17, 1895.*

*Master and servant: Injury to employee in sawmill: Obvious danger: Contributory negligence: Court and jury.*

1. An employee in a sawmill, of ten or twelve years experience, who voluntarily put his hand into a hole in the boxing around a trimmer, and attempted to pick up the end of a broken chain lying within two or three inches of a revolving saw, and was injured by his hand coming in contact with the saw, is *held*, as a matter of law, to have been guilty of contributory negligence.

2. The mere fact that such employee had remonstrated against the saw being boxed up, and had been assured that it would be all right, did not excuse him from exercising ordinary care to avoid the danger.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Sanborn, Dufur & O'Keefe,* and oral argument by *A. W. Sanborn.*

For the respondent there was a brief by *Lamoreux, Gleason, Shea & Wright,* and oral argument by *E. F. Gleason.*

CASSODAY, C. J. This is an action to recover damages for personal injuries sustained by the plaintiff July 6, 1893, about 7 o'clock P. M., while in the employ of the defendant in repairing its trimmer in its sawmill, at Washburn. At the close of all the evidence the court directed a verdict in favor of the defendant, and from the judgment entered thereon the plaintiff brings this appeal.

The only question presented is whether the evidence is sufficient to have taken the case to the jury. The undisputed evidence tended to prove that the plaintiff was at the time thirty years of age; that he had worked in and about sawmills ten or twelve years; that he had worked in this

mill five seasons prior to the accident; that during the last
four seasons he was known as the "handy man" around the
mill, charged with the duty of looking after small breakages
and repairs; that he could run the trimmer or edger; that
he was there in the mill to fix anything that should be
broken; that the trimmer had been there during all the
time the plaintiff had worked in the mill; that it consisted
of a table twenty-four feet long, about six feet wide, three
feet high at the rear end, and two feet at the front; that it
was provided with ten circular saws, each eighteen or twenty
inches in diameter, attached to a shaft, connected with one
of the main shafts in the mill, located a little to the rear of
the center of the table, and about two and one-half feet
from the back end, and constructed so that they could be
raised above the surface of the table, and lowered below the
same, by means of foot levers, — one for each saw; that
when in use the saws were partly above the surface of the
table, and when not in use they were lowered entirely below
the surface of the table, and would then be from four to six
inches from the floor; that all the saws revolved when the
mill was running, whether they were in use or not; that it
was open and entirely uncovered below the table, so that
the saws, when not in use, were open to plain view to any
one looking under the table; and that the lumber was car-
ried across the table by twelve to fifteen endless chains, from
sixteen to seventeen feet long, which ran over the top of the
table and around under the table about four to five inches
from the saws, and had thereon sprockets, by which the
lumber was carried to the saws.

The undisputed evidence further tended to prove that in
the spring prior to the injury the plaintiff assisted in making
repairs on the mill; that he worked on this trimmer with
the night foreman, and was there when they commenced
boxing up this machine on the back side and ends, but there
was a hole left on the back side of the table, about three or

Schultz vs. C. C. Thompson Lumber Co.

four inches wide and ten or twelve inches long, at each of these endless chains, through which such chain ran; that such chains were liable to break and fall under the table, and when one did so the only way to get it was to reach through such hole; that at the time the trimmer was boxed up in the spring the plaintiff told the superintendent of the work that it was improper to box it up, as a fellow was liable to get hurt, and was told that it would be all right; that the plaintiff did not see the work on the trimmer completed, and did not see under the machine after it was so boxed up; that on the day of the injury one of those endless chains broke; that the plaintiff was called to fix it; that he went to fix it, but did not call the foreman, who was in the mill below, downstairs; that both ends of the broken chain were on the floor; that one end had dropped over, so that it stuck out of the hole and hung on the floor back of the trimmer, and the other end ran over the table and was sticking out in front of the trimmer; that there was too much loose chain on the floor in front of the trimmer, where a lad was stationed; that the plaintiff, at the back end of the trimmer, pulled the chain towards himself quite a little; that the plaintiff then told the lad to pull it back towards him, and he did so, but pulled it too far, so that the end towards the plaintiff slipped through the hole and went under the table; that the plaintiff did not see the saw, which was within six inches of the floor, but knew it was there running, and did see the end of the chain lying there, within two or three inches of the saw, which was then running; that he then reached down through the hole for the chain, and got hold of it, and tried to pull it out, but that it was caught some way; that while he was trying to get it out he made a jerk with the chain in his hand, and his thumb and fingers struck the saw and were taken off by the saw; that he knew the saw was in there, running, at the time, and that his hand would be cut if it came in contact with it; that he had fixed chains

on that trimmer before he was hurt,— more than two that year, but not more than two that summer; that before he was hurt he had put chains on a good many times — five or six times — when the mill was not running; that this is the only time he ever attempted to put a chain on when the mill was running.

Such being the nature of the undisputed evidence, the trial court very properly directed a verdict in favor of the defendant. The danger of reaching down through the hole to get the end of the chain, lying within two or three inches of the saw, when the same was running, was open and obvious to any person of ordinary intelligence, and especially to one with the experience and of the age of the plaintiff. *Burnell v. West Side R. Co.* 87 Wis. 387; *Dougherty v. West Superior I. & S. Co.* 88 Wis. 350. The mere fact that the plaintiff had, the spring before, remonstrated against the saws being boxed up, as they were, and had been assured that the work would be all right, did not excuse the plaintiff from exercising ordinary care to avoid the danger.

*By the Court.*— The judgment of the circuit court is affirmed.